IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACCREDITED SURETY AND CASUALTY COMPANY INC., | § | |
| Plaintiff, | § | |
| V. | § | No. 3:24-cv-1009-BN |
| TFORCE LOGISTICS, INC. f/k/a DYNAMEX, INC., | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Accredited Surety and Casualty Company, Inc. ("Accredited"), invoking the Court's diversity subject-matter jurisdiction, filed this lawsuit seeking a declaratory judgment that Defendant TForce Logistics, Inc. f/k/a Dynamex, Inc. ("Dynamex") "is not entitled to additional insured coverage and that Accredited is entitled to recoupment of the amount it paid to settle an underlying wrongful death action on behalf of Dynamex." Dkt. No. 1.

After the parties consented in writing, this case was ordered transferred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of judgment, under 28 U.S.C. § 636(c). *See* Dkt. No. 28.

Considering this transfer, the Court entered an order requiring the parties to meet and confer and file an amended joint status report. *See* Dkt. No. 32.

Through this report [Dkt. No. 34], the parties provided that they

> agree that dividing this case into two phases would be efficient to avoid potentially unnecessary discovery and proceedings. Deciding whether the claims against Dynamex in [an Illinois state court personal injury

> lawsuit brought against Dynamex and others styled *Terrell v. Larson Express, et al.*, Cook County Case No. 14L 000992 (the "*Terrell* Action")] were, or were not, covered under the relevant insurance policy, and what portion of the settlement was properly attributable to Dynamex's exposure, will potentially involve fairly significant, factually detailed discovery regarding the facts involved in the accident at issue in the underlying the *Terrell* Action, the contracts between the parties involved in the *Terrell* Action, and the nature and extent of exposure faced by those parties in the *Terrell* action. Those issues will only be relevant, however, if, in fact, the [Stipulation and Settlement Agreement between Accredited and Dynamex (the "Stipulation") [Dkt. No. 39-1]] preserved Accredited's right to potential reimbursement. Thus, the Parties propose phasing of this case into Phase 1 and Phase 2.

*Id.* at 6-7.

Consistent with the parties' proposal, the Court entered an initial (or Phase 1) scheduling order [Dkt. No. 35] setting a deadline to file Phase 1 dispositive motions, *see id.*, ¶ 2.

Prior to this deadline, Accredited moved for summary judgment on whether the Stipulation preserved its right to seek recoupment of monies it paid to settle the *Terrell* Action. *See* Dkt. Nos. 38, 39, & 47-49.

Dynamex then responded and timely moved for summary judgment on its assertions that, "[i]f the Stipulation falls short of what Texas law requires for Accredited's claimed right of reimbursement, then Accredited's Motion for Partial Summary Judgement on Recoupment must be denied, and Dynamex is entitled to complete summary judgment." Dkt. No. 45 at 8; *see also generally id.*; Dkt. Nos. 46 & 50.

And, because the record contains the requisite citizenship evidence to confirm subject-matter jurisdiction at summary judgment, the Court grants Accredited's

motion, denies Dynamex's, and directs the parties to prepare for Phase 2, as explained below.

## Legal Standards

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (quoting FED. R. CIV. P. 56(a)), *certified question accepted* (Sept. 3, 2021), *certified question answered*, 642 S.W.3d 551 (Tex. 2022).

As set out above, the only issue now before the Court is a legal one – whether, under Texas law, the Stipulation preserved Accredited's right of reimbursement.

And, "[a]lthough [it's] an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) (citation omitted); *accord Maxim Crane Works*, 11 F.4th at 350; *see also Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-cv-1217-B, 2018 WL 2323243, at *2 (N.D. Tex. Mar. 26, 2018) ("Cases involving the interpretation of an unambiguous contract are particularly appropriate for summary disposition." (citing *GeoSouthern Energy Corp. v. Chesapeake Operating, Inc.*, 274 F.3d 1017, 1022 (5th Cir. 2001))), *rec. accepted*, 2018 WL 2323471 (N.D. Tex. May 2, 2018).

## Analysis

### I. The record contains the requisite citizenship evidence to confirm the Court's subject-matter jurisdiction at summary judgment.

"As always, jurisdiction first." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95

F.4th 951, 958 (5th Cir. 2024) (citation omitted).

Accredited is the party invoking the Court's subject-matter jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 1, ¶ 3.

But, when Accredited filed its motion for summary judgment, it failed to provide evidence as to the citizenships of the parties as required by controlling Fifth Circuit precedent, as explained in the Phase 1 scheduling order:

> The United States Court of Appeals for the Fifth Circuit recently explained that, in a diversity case under 28 U.S.C. § 1332,
>
> - "[a]t the pleading stage, the party invoking the federal court's jurisdiction must allege the citizenship of each" party;
> - "[a]t the summary judgment stage," the party invoking the federal court's jurisdiction "must provide evidence sufficient to support a jury finding of the citizenship of" each party; and,
> - "at trial," the party invoking the federal court's jurisdiction "must prove the citizenship of each" party.
>
> *Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order); *accord J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (published order); *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 315 n.* (5th Cir. 2019).
>
> The Fifth Circuit has also long held that district courts can and should do their own fact-finding and final determinations on their subject-matter jurisdiction over a case at any stage, including before summary judgment. *See Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) ("Judges have the power to resolve certain threshold issues without the participation of a jury before the adjudication of a case on its merits. For example, when subject matter jurisdiction over a case turns on disputed facts, judges have the power to resolve these disputes in assuring themselves of their courts' jurisdiction."); *Edwards v. Associated Press*, 512 F.2d 258, 262 n.8 (5th Cir. 1975) ("Consideration of affidavits and, where necessary, the taking of testimony are appropriate means for resolving jurisdictional disputes.").
>
> And, when district courts determine "the existence of subject matter jurisdiction in fact," the courts do not proceed under the strictures, burdens, or standards that apply to motions under Federal Rules of Procedure 12(b)(6) and 56, such as attaching "presumptive truthfulness … to [a] plaintiff's [or removing defendant's] allegations." *Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012

> (5th Cir. 1979) (cleaned up). A district court is instead "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"; "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"; and the party invoking the federal court's jurisdiction "will have the burden of proof that jurisdiction does in fact exist." *Id.* (cleaned up).
>
> To comply with this governing law, in a diversity case under 28 U.S.C. § 1332, the party invoking the federal court's jurisdiction must include, in any summary judgment motion or response that the party files, evidence that is at least sufficient to support a jury finding of the citizenship of each party but – better yet (to the extent there is a difference in degree here) – evidence that is sufficient for the court to evaluate and determine on its own the citizenship of each party. The party invoking the federal court's jurisdiction must also include, in any summary judgment motion or response that the party files, a section of its supporting brief that addresses the necessary jurisdictional facts regarding each party's citizenship under Section 1332(a) and the supporting evidence submitted to support the Court's determinations.

Dkt. No. 35 at 3-5.

The Court recognized this shortcoming at the time that Accredited filed its summary judgment motion and opted to allow Dynamex an opportunity to argue that this lack of evidence requires dismissal for lack of subject-matter jurisdiction. *Cf. Riddley v. CooperSurgical, Inc.*, 808 F. Supp. 3d 725, 732 (N.D. Tex. 2025) ("At the summary judgment stage particularly, the requirement is for evidence, and there is no record evidence in this case on which a reasonable jury could base a finding as to CooperSurgical's citizenship," and, so, remand for lack of subject matter jurisdiction was required.).

But Dynamex did not advance this argument.

It instead came forward with its own evidence as to citizenship. *See* Dkt. No. 46; *see also Riddley*, 808 F. Supp. 3d at 732 (observing that the party not invoking the Court's subject-matter jurisdiction "bears a secondary burden to the extent she

wants the case to remain in federal court").

Evidence as to Dynamex's citizenship – sworn testimony from its counsel that it's "incorporated under the laws of Delaware" and that "[i]ts principal place of business is in Dallas, Texas," *id.* at 3, ¶ 6 – is sufficient under the standards set out above, *see Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

So is Dynamex's evidence as to Accredited – alleging that, "as shown by the Florida Division of Corporations website, company detail lookup on Accredited (D Appx., p. 10-13), Accredited is a Florida for profit corporation with its principal place of business in Orlando Florida," Dkt. No. 45 at 8-9 – and including a printout from that website [Dkt. No. 46 at 11-14]; *see* FED. R. EVID. 902(5); *see, e.g.*, *Swagger v. Mack Trucks, Inc.*, No. 1:20-CV-01206-RP, 2022 WL 19076609, at *10 (W.D. Tex. Dec. 13, 2022) ("Though evidence does not need to be authenticated at the summary judgment stage, [the exhibits] are printouts from a government website … and are self-authenticating under Fed. R. Evid. 902(5)."), *rec. accepted in applicable part*, 2023 WL 2557402 (W.D. Tex. Jan. 6, 2023); *Riverkeeper v. Taylor Energy Co., LLC*, 113 F. Supp. 3d 870, 881 n.52 (E.D. La. 2015) (collecting cases holding that reports printed directly from government websites satisfy the public records exception to the hearsay rule).

The Court is therefore satisfied that the burden as to establishing citizenship under Section 1332 at summary judgment has been carried.

## II. Accredited is entitled to summary judgment, and, so the Court denies Dynamex's cross-motion for summary judgment.

The sole issue before the Court is the interpretation of certain language in the

Stipulation – whether this language is sufficient to preserve Accredited's right to request recoupment of monies it paid to settle the *Terrell* Action.

Under "Texas law on interpreting contracts," "[a] court's role 'is to determine, objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean.'" *Kan. City S. Ry. Co. v. Sasol Chems. (USA), L.L.C.*, 113 F.4th 446, 450 (5th Cir. 2024) (quoting *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020) (in turn quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018))).

"In making that determination, '[t]ext is the alpha and the omega of the interpretive process.'" *Id.* (quoting *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 626 (5th Cir. 2019)).

And, so, that text is set out below.

> NOW WHEREFORE, in exchange for good and valuable consideration, the Parties stipulate and agree as follows:
>
> 1. The Parties hereby stipulate and agree that a global settlement in the amount of $4,000,000 is a fair and reasonable global settlement for the Defendants in the *Terrell* Action. The Parties stipulate and agree that Accredited, as the potential reinsurer of the Excess Policy ultimately may pay the amount of the $4,000,000 settlement for the Defendants' potential risk of alleged liability in the *Terrell* Action.
>
> 2. In so stipulating, Dynamex explicitly and unequivocally consents to the global settlement in the *Terrell* Action for $4,000,000, and reserves all rights, including its right to claim that any portion of the global settlement that could be attributed to Dynamex shall be covered under the Excess Policy, or assert any other defense available to it against reimbursement or recoupment from Accredited or any other party. Accredited, in so stipulating, explicitly and unequivocally reserves its right to seek reimbursement and recoupment of any portion of the global $4,000,000 settlement from Dynamex on the basis that the Dynamex is not entitled to coverage for the *Terrell* Action under the Excess Policy or assert any other defense available to it in pursuing reimbursement or recoupment from Dynamex or any other party,

> including other potentially responsive insurers of Dynamex. The Parties hereby stipulate and agree to the preservation of the rights asserted by the Parties in this Section 2.
>
> 3. The Parties stipulate and agree that through this Stipulation and Settlement Agreement, they each make no representation or warranty as to the amount of the global $4,000,000.00 settlement that should or can be attributed to the other Party and/or each Defendant.

Dkt. No. 39-1, Ex. A-1.

"Because of the centrality of text, Texas law places limits on the use of 'facts and circumstances surrounding a negotiated contract's execution.'" *Kan. City S. Ry. Co.*, 113 F.4th at 450 (quoting *URI, Inc.*, 543 S.W.3d at 757).

So "[a] court may not use these 'surrounding facts and circumstances' to 'make the language say what it unambiguously does not say' or 'to show that the parties probably meant, or could have meant, something other than what their agreement stated.'" *Id.* (quoting *URI, Inc.*, 543 S.W.3d at 757).

But "Texas law does permit consideration of 'objectively determinable facts and circumstances that contextualize the parties' transaction,'" which "include 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties.'" *Id.* (cleaned up; quoting *URI, Inc.*, 543 S.W.3d at 757-58, 768).

As to any contractual ambiguity, "[d]eciding whether a contract is ambiguous is a question of law for the Court." *Valentine v. Whitetail Capital, LLC*, No. 3:23-cv-575-BN, 2025 WL 1083246, at *10 (N.D. Tex. Apr. 9, 2025) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

> A contract is not ambiguous if it is so worded that it can be given a definite or certain legal meaning. If the contract is unambiguous, then

> a court must construe the contract as a matter of law. If a contract is susceptible to two or more reasonable interpretations, then it is ambiguous as a matter of law and its meaning must be determined by a finder of fact, who may consider evidence of the parties' subjective intent. Importantly, extrinsic evidence may only be used to aid the understanding of an unambiguous contract's language, not change it or create ambiguity. An interpretation may be unreasonable if it would create various absurdities throughout the contract. An absurd interpretation, then, cannot cause a contract to be ambiguous.

*Kan. City S. Ry. Co.*, 113 F.4th at 451 (cleaned up).

The Texas Supreme Court has squarely addressed what contractual language is required for an insurer to seek reimbursement from the insured:

> "[T]he few courts that have considered the settlement-reimbursement question have generally opted to recognize a reimbursement right only if the insured has authorized the settlement and agreed to reimburse the insurer should the insurer prevail on its coverage defense. We agree with this approach. Otherwise, the insured is forced to choose between rejecting a settlement within policy limits or accepting a possible financial obligation to pay an amount that may be beyond its means, at a time when the insured is most vulnerable. Rather than place the insured in this position, we hold that, when coverage is disputed and the insurer is presented with a reasonable settlement demand within policy limits, the insurer may fund the settlement and seek reimbursement only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement.

*Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 135 (Tex. 2000) (cleaned up); *see also Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 47-48 (Tex. 2008) ("The Court in *Matagorda County* weighed the varying risks that arise in this context and decided that insurers, on balance, are better positioned to handle them 'either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure.'

We decline to overrule that decision." (quoting 52 S.W.3d at 136)); *Am. Int'l Specialty Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 656 (5th Cir. 2008) ("In Texas, when there is a dispute as to coverage, an insurer faced with a settlement demand within the policy limits may fund the settlement of an underlying action and seek reimbursement from the insured 'only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement.' Here, Res-Care unequivocally consented to the settlement and agreed in the non-waiver agreement that American retained its right to seek reimbursement. The non-waiver agreement satisfied the conditions of *Matagorda County* and permitted American to seek reimbursement from Res-Care for uncovered claims that were included in the settlement with the Wright plaintiffs." (quoting *Matagorda Cnty.*, 52 S.W3d at 135)).

And the Court finds as a matter of law that the applicable language in Section 2 of the Stipulation is unambiguous and clearly and unequivocally sets out (1) that Dynamex "consent[ed] to the global settlement in the *Terrell* Action" and "reserve[d] all rights, including its right to claim that any portion of the global settlement that could be attributed to Dynamex shall be covered under the Excess Policy, or assert any other defense available to it against reimbursement or recoupment from Accredited or any other party"; (2) that Accredited "reserve[d] its right to seek reimbursement and recoupment of any portion of the global $4,000,000 settlement from Dynamex on the basis that the Dynamex is not entitled to coverage for the *Terrell* Action under the Excess Policy or assert any other defense available to it in pursuing reimbursement or recoupment from Dynamex or any other party, including

other potentially responsive insurers of Dynamex"; and (3) that Dynamex and Accredited "agree[d] to the preservation of the rights asserted by" the other. Dkt. No. 39-1, Ex. A-1.

As such, Dynamex "unequivocally consented to the settlement and agreed in the [Stipulation] that [Accredited] retained its right to seek reimbursement." *Res-Care*, 529 F.3d at 656.

And, so, this language unambiguously "satisfied the conditions of *Matagorda County* and permit[s Accredited] to seek reimbursement from [Dynamex]." *Id.*

And the Court need not delve into the parties' prior negotiations. *See Kan. City S. Ry. Co.*, 113 F.4th at 451 ("Under Texas law, … extrinsic evidence is never the place to start in interpreting a contract. If a contract is unambiguous, evidence of negotiations and prior drafts are prohibited by the parol evidence rule. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483-84, 502 (Tex. 2019). We first must determine whether the [contract] is unambiguous without extrinsic evidence; if it is unambiguous, then it 'must be enforced as written without considering extrinsic evidence bearing on the parties' subjective intent.' *Devon Energy Prod. Co. v. Sheppard*, 668 S.W.3d 332, 343 (Tex. 2023). We therefore start with a close review of the relevant sections of the [contract].").

Accordingly, Accredited's motion is granted, while Dynamex's is denied.

## III. The parties must meet and confer and then advise the Court as to Phase 2, and Accredited must address its unresolved sealing submission.

The parties should meet and confer and then file by **October 13, 2026** a joint

status report under Federal Rule of Civil Procedure 26(f) to set out their proposal for the resolution of this lawsuit in Phase 2.

Also by **October 13**, Accredited must address its unresolved sealing submission.

That is, the Court previously denied without prejudice "Accredited's motions to seal [Dkt. Nos. 40 & 41] but [determined that it would] keep the sealed submissions under seal for now to allow Accredited time to file a motion to seal that conforms with controlling circuit precedent, as further explained in the Standing Order on Filing Material Under Seal [Dkt. No. 29]." *Accredited Sur. & Cas. Co. Inc. v. TForce Logistics, Inc.*, No. 3:24-cv-1009-BN, 2025 WL 3482742, at *2 (N.D. Tex. Dec. 3, 2025).

"Rather than move for leave again, Accredited supplement[ed] its [summary judgment motion] with the Agreed Stipulation (Doc. 47) so as to provide the Court with additional factual support concerning Accredited's obligation, if any, with respect to the National Union policy." Dkt. No. 48.

But that move did not resolve the deficient sealing submission.

And, under the "ungenerous" approach as to sealing judicial records mandated by controlling law in the Fifth Circuit, Accredited's submission remains subject to being unsealed unless it decides to correct the deficiencies as explained in the December 3, 2025 memorandum opinion and order. *Accredited Sur. & Cas. Co.*, 2025 WL 3482742, at *1 ("Accredited's submissions on sealing do not support sealing the entire agreement where the United States Court of Appeals for the Fifth Circuit 'require[s] information that would normally be private to become public by entering

the judicial record,' *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022), and, so, it has directed district courts to "undertake a case-by-case, document-by-document, **line-by-line** balancing of the public's common law right of access against the interests favoring nondisclosure" and to explain their sealing decisions 'at a level of detail that will allow for [appellate] review,' *Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (cleaned up; emphasis added); *see also I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 411 (5th Cir. 2023) ('We recently instructed that courts should be ungenerous with their discretion to seal judicial records and warned that we heavily disfavor sealing information placed in the judicial record. In light of these admonitions, it is clear that this record was over-sealed" where the district court's "orders fail to acknowledge the public interest in access to judicial records and fail to articulate any reasons that would support sealing.' Consequently, '[t]hese orders must be vacated.' (cleaned up))." (emphasis in original)).

And, having decided to place information into the judicial record, Accredited may not now attempt to withdraw such information even if that information has not been relied on to resolve a pending motion. *See CHCA Bayshore, L.P. d/b/a HCA Hou. Healthcare Se. v. La. Health Serv. & Indem. Co. d/b/a Blue Cross/Blue Shield of La.*, No. 3:25-cv-2895-B, Dkt. No. 33 (N.D. Tex. Aug. 26, 2026) ("[W]hat matters is that BCBSLA submitted the materials in support of its motion to dismiss – not whether the Court relied on that information when resolving the motion. By doing so, BCBSLA made the materials part of the judicial record. And the Court does not, as a

general matter, unfile (and, in the age of electronic filing and docketing, electronically delete) materials filed as support for motions if and when the Court does not actually rely on them in deciding the motion. Those materials are part of the motion and of the judicial record. And they would, for instance, be part of any relevant record on appeal raising issues with the resolution of that motion. And, as a judicial record, those materials either must be publicly available or ordered sealed based on the showings, analysis, and findings that the governing law requires. *See June Med.*, 22 F.4th at 519-21. Those showings and findings might be even harder to make as to materials on which a court relied in resolving a dispositive motion. *See Le*, 990 F.3d at 420. But a court's deciding not to rely on materials filed in support of a motion does not, conversely, mean that those materials may be sealed without the required showings, analysis, and findings and that any motion to seal those materials is then moot – or that the filed materials and supporting motion to seal can and should be unfiled at all." (cleaned up)), *aff'd*, *id.*, Dkt. No. 38 (N.D. Tex. Sept. 21, 2026).

## Conclusion

Because the record contains the requisite citizenship evidence to confirm subject-matter jurisdiction at summary judgment, the Court GRANTS Plaintiff Accredited Surety and Casualty Company, Inc.'s motion for summary judgment [Dkt. No. 38], DENIES the motion for summary judgment filed by Defendant TForce Logistics, Inc. f/k/a Dynamex, Inc. [Dkt. No. 45], ORDERS the parties to meet and confer and then file by **October 13, 2026** a joint status report under Federal Rule of Civil Procedure 26(f) as to Phase 2 of this litigation, and ORDERS Accredited to

address its unresolved sealing submission by **October 13, 2026**.

SO ORDERED.

DATE: September 28, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE